TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-01-00204-CV







Stefano Pessina, Appellant



v.



Joe S. Rosson; Elizabeth G. Rosson; Ghent W. Rosson; Todd A. Rosson; and

Trevor J. Rosson, Individually, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. GNO-01419, HONORABLE PETER LOWRY, JUDGE PRESIDING







 Appellant Stefano Pessina brings this appeal from the district court's denial of his
special appearance. Pessina contends the district court erred by (1) denying his special appearance,
(2) holding Texas has specific jurisdiction over him, (3) determining that the exercise of personal
jurisdiction would not offend traditional notions of fair play and substantial justice, and (4) failing
to hold that the fiduciary shield doctrine applied to Pessina's acts. (1) We will affirm the district court's
order.

BACKGROUND

 Pessina, a resident of Monaco and citizen of Italy, represented Alliance Unichem
("Alliance"), an English corporation, in investment negotiations with Rx.com, an Austin corporation
formerly owned and controlled by the Rossons. Pessina traveled to Texas five times within a span
of two years to meet with Joe Rosson concerning business dealings between Alliance and Rx.com. 
Rosson alleges that, as a result of those meetings and certain assurances made by Pessina, Rosson
entered into a course of dealings ultimately culminating in Rx.com's insolvency. Alliance assumed
ownership of Rx.com as a result of its creditor status with the company. The Rossons initially
brought suit against Alliance and other corporate defendants and later amended their pleadings to
include Pessina individually. Pessina filed a special appearance, which the district court denied. 
Pessina now brings this interlocutory appeal.


DISCUSSION

Specific Jurisdiction

 In his first two issues, Pessina argues the district court erred by denying his special
appearance and by holding Texas has personal jurisdiction over him. Generally, the standard of
review for a district court's denial of a special appearance is a factual sufficiency review. See, e.g.,
Minucci v. Sogevalor, 14 S.W.3d 790, 794 (Tex. App.--Houston [1st Dist.] 2000, no pet.); Cadle
v. Graubart, 990 S.W.2d 469, 470 (Tex. App.--Beaumont 1999, no pet.). However, "[w]here . . .
the special appearance is based on undisputed or otherwise established facts, an appellate court
should conduct a de novo review of the trial court's order." Brown v. Gen. Brick Sales Co., Inc., 39
S.W.3d 291, 294 (Tex. App.--Fort Worth 2001, no pet. h.); see also Daimler-Benz
Aktiengesellschaft v. Olson, 21 S.W.3d 707, 715 (Tex. App.--Austin 2000, pet. dism'd w.o.j.). In
his reply brief and at oral argument, Pessina contends the facts underlying the jurisdictional inquiry
are undisputed:


A concession made by the Rossons' counsel at the hearing below removed the only
factual controversy from the personal jurisdiction calculus, leaving for the decision
the application of controlling law to the undisputed facts. Specifically, the Rossons'
attorney told the district court it did not have to resolve any factual conflict as to
whether Mr. Pessina stood to benefit personally from any of the activity that the
Rossons claim forms the basis of personal jurisdiction.



To support his argument that there are no disputed facts, Pessina points to the following statement
made by the Rossons' attorney during the special appearance hearing:


I think we're going to have a real argument about the personal gain of Mr. Pessina
versus Mr. Rosson, about whether they were trying to make a personal profit separate
and apart from the corporation. We're not going to agree on that, but that's
irrelevant.



 We do not agree with Pessina that this statement by the Rossons' attorney renders this
dispute purely legal; a factual dispute still exists as to whether Mr. Pessina acted in a personal or
representative capacity during some of his negotiations with Mr. Rosson. Therefore, we will review
the district court's denial of his special appearance under a factual sufficiency review. See Cadle,
990 S.W.2d at 471. 

 We note that the Rossons do not have the burden to establish facts to support the
exercise of jurisdiction over Pessina; it is Pessina who has the burden of negating all bases of
jurisdiction. See id. To prevail in a special appearance, a nonresident must negate all bases of
personal jurisdiction. Id. at 470. When a trial court overrules a special appearance, the defendant
should request findings of fact under Texas Rule of Civil Procedure 296. Daimler-Benz, 21 S.W.3d
at 715. Because the trial court made no findings in this case, we must imply all facts necessary to
support the ruling. Id.

 A Texas court may exercise jurisdiction over a nonresident defendant if the Texas
long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction comports with
due process. Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d
223, 226 (Tex. 1991); see also Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997 & Supp.
2001). The broad language of the long-arm statute permits an expansive reach, limited only by the
federal constitutional requirements of due process. Schlobohm v. Schapiro, 784 S.W.2d 355, 357
(Tex. 1990). As a result, we consider only whether it is consistent with federal due process for the
Texas courts to assert personal jurisdiction over Pessina. See Daimler-Benz, 21 S.W.3d at 714.

 The federal due process clause protects a nonresident's liberty interest in not being
subject to the jurisdiction of a forum with which that nonresident has established no meaningful
contacts, ties, or relations. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985). Under
the federal due process clause, a state may assert personal jurisdiction over a nonresident defendant
only if the defendant has purposefully established minimum contacts with the forum state and the
exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Id. at
476. The touchstone of minimum contacts is whether the nonresident defendant has purposefully
availed itself of the privilege of conducting activities in Texas so that it is reasonable for the
nonresident defendant to expect the call of a Texas court. Daimler-Benz, 21 S.W.3d at 714.

 The minimum contacts analysis has been refined into two types of jurisdiction--
general and specific. Id. The parties stipulate that general jurisdiction is not at issue, and that this
appeal is limited to whether Texas has specific jurisdiction over Pessina. Specific jurisdiction exists
when the cause of action arises out of or relates to the nonresident's contacts with the forum state. 
Id. The defendant's activities must have been purposefully directed toward the forum state. Id. 
Under specific jurisdiction, the minimum contacts analysis focuses on the relationship among the
defendant, the forum, and the litigation. Id. (citing Guardian Royal, 815 S.W.2d at 228).

 In their fourth amended petition, the Rossons allege that Pessina caused and exploited
Rx.com's financial crisis and oppressed its shareholders:


44. Pessina encouraged Rx.com to privately place Rx.com equity needed to fund its
operations. Pessina further demanded, as a condition to the Security Purchase
Agreement for the purchase of the Convertible Note, that Rx.com accelerate its
expansion and marketing plans. Pessina explained that he would be able to
obtain additional capital for Rx.com before Rx.com spent its present cash in the
accelerated development efforts. Based upon Pessina's representations and
requests, Rx.com agreed to accelerate the development plans of Rx.com. This
accelerated development led directly to the cash crisis at Rx.com which Alliance
Pessina [sic] exploited to steal Rx.com's technology and the value of the
Plaintiff's stock at Rx.com. The meeting between Plaintiff Rosson and Rx.com
was held in the offices of Rx.com in Austin, Texas.


45. Mr. Pessina traveled to Austin in April 2000 to negotiate the term sheet under
which Plaintiffs agreed to resign their management positions at Rx.com. Indeed,
Mr. Pessina was the individual who insisted that Plaintiffs leave their
management positions. This exit became the vehicle which Alliance and
Pessina used to oppress the Plaintiffs' interest as shareholders.



These pleadings sufficiently allege that Pessina is subject to specific jurisdiction in Texas. Tex. R.
Civ. P. 45(d); Tex. Civ. Prac. & Rem. Code Ann § 17.042(2) (West 1997) ("[A] nonresident does
business in this state if the nonresident commits a tort in whole or in part in this state."). In support
of these allegations, the Rossons offered the affidavit of Mr. Rosson, which stated that Pessina acted
in his personal capacity by negotiating for a personal interest in a future business venture and
offering to invest personal funds to facilitate the Rossons' withdrawal from Rx.com:


8. Moreover, Mr. Pessina did not act merely in his capacity as an officer of
Alliance, he acted in his personal capacity as well. In December 1999, Mr.
Pessina requested that I agree to restructure the pan-European Joint venture to
include a personal interest for Mr. Pessina and for myself. In addition, in April
2000, during the negotiation of the term sheet in Austin, Texas, Mr. Pessina
offered to invest his personal funds in another business venture of mine as
compensation for the value of my and the other Plaintiffs' Rx.com stock if it
would facilitate my and the other Plaintiffs' withdrawal from our management
positions at Rx.com.


Based on the Rossons' pleadings and affidavit, there is sufficient evidence to support the conclusion
that Pessina is subject to specific jurisdiction in Texas. See Tex. R. Civ. P. 120a(3). Accordingly,
the district court did not err in denying Pessina's special appearance, and we overrule his first and
second issues. 


Traditional Notions of Fair Play and Substantial Justice

 In his third issue, Pessina argues that the trial court erred by determining that the
exercise of personal jurisdiction over him comports with traditional notions of fair play and
substantial justice. After a court finds the minimum contacts necessary to exercise personal
jurisdiction over a nonresident defendant, federal due process requires a determination of whether
the exercise of that jurisdiction comports with traditional notions of fair play and substantial justice. 
Guardian Royal, 815 S.W.2d at 228. In deciding this issue, we consider the following factors: (1)
the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the
plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's
interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the
several states in furthering fundamental substantive social policies. Daimler-Benz, 21 S.W.3d at
725. "When the defendant is a resident of another nation, the court must also consider the procedural
and substantive policies of other nations whose interests are affected by the assertion of jurisdiction
by a state court as well as the federal government's interest in its foreign relations policies." Id. at
725-26.

 Another court of appeals has observed that "[o]nly in rare cases will the exercise of
jurisdiction not comport with fair play and substantial justice when the nonresident defendant has
purposefully established minimum contacts with the forum state." Minucci, 14 S.W.3d at 798-99. 
Accordingly, it is necessary that Pessina "present a compelling case that the presence of some
consideration would render the assertion of jurisdiction unreasonable." Id. at 798. Pessina
emphasizes that he resides in Monaco and is a citizen of Italy, has neither a business office nor
residence in Texas, has no registered agent for service in Texas, owns no real estate and pays no
taxes in Texas, has never been licensed to do business in Texas, does not maintain any bank accounts
in Texas, and does not conduct any business in Texas. The basis of his last claim, of course, is that
he has never conducted business in Texas in a personal capacity and therefore has not purposefully
availed himself of the benefits and protections of the laws of Texas.

 Pessina cites two cases holding that, although a nonresident defendant had minimum
contacts, the exercise of personal jurisdiction would not comport with notions of fair play and
substantial justice. See Guardian Royal, 815 S.W.2d at 233; Minucci, 14 S.W.3d at 799. Guardian
Royal involved a dispute between two insurers, neither of which was a Texas consumer or insured;
accordingly, the court held "Texas' interest in adjudicating the dispute is considerably diminished." 
Guardian Royal, 815 S.W.2d at 233. Similarly, the First Court of Appeals explained why the
exercise of personal jurisdiction over Minucci, an Italian citizen, did not comport with notions of fair
play and substantial justice:


Texas has no interest in adjudicating this dispute. The cause of action did not occur
in Texas; neither party is a resident of this state; Swiss law governs the dispute, none
of the investors were Texas citizens, and the contract was written in Italian. Thus,
Texas would not be protecting its citizens from the potential future actions of
Minucci.



Minucci, 14 S.W.3d at 798. 

 In the case at bar, however, Texas' interest in adjudicating the dispute is significant:
Rx.com is a Texas corporation; the Rossons are residents of Texas; Pessina's alleged tortious acts
occurred in Texas; and whether Pessina is liable will be determined according to Texas law. In this
case, "the interests of the forum state and the plaintiff will justify the severe burden placed upon the
nonresident defendant." Guardian Royal, 815 S.W.2d at 232. Furthermore, Pessina does not
contend that the procedural and substantive policies of other nations or the federal government's
foreign relations policies will be affected by the exercise of personal jurisdiction over him. 
Therefore, we overrule Pessina's third issue.


The Fiduciary Shield Doctrine

 In his final issue, Pessina argues the district court erred in failing to apply the
fiduciary shield doctrine to his acts, rendering him individually amenable to suit in Texas. The
fiduciary shield doctrine is a theory of liability that has been applied in a jurisdictional context. See
Siskind v. Villa Found. for Educ., Inc., 642 S.W.2d 434, 437-38 (Tex. 1982) (speaking in terms of
"alter ego"). The doctrine shields a nonresident defendant from suit in a forum state when his or her
only contacts with that state are in a representative capacity. See Cadle, 990 S.W.2d at 473. The
parties agree that this doctrine has been used to shield a nonresident defendant from suit based on
general jurisdiction, but there is some disagreement about whether it applies in a specific jurisdiction
context.

 The Rossons' pleadings specifically allege that Pessina caused and exploited
Rx.com's financial crisis and oppressed its shareholders. In addition, Mr. Rosson's affidavit asserts
that Pessina acted in his personal capacity by negotiating for a personal interest in a future business
venture and offering to invest personal funds to facilitate the Rossons' withdrawal from Rx.com. 
This case is therefore distinguishable from two of the main cases Pessina relies upon for the
contention that he is protected from personal jurisdiction by the fiduciary shield doctrine. See
Siskind, 642 S.W.2d at 437-38 (emphasizing that plaintiff's petition did not attribute specific acts
of conspiracy or misrepresentations to individual respondents); Cadle, 990 S.W.2d at 473 (noting
that plaintiff's "allegations and evidence relevant to the tortious conduct are non-specific" and that
the only evidence presented by plaintiff in support of his argument that the court should have
personal jurisdiction over defendant is that he "was the president, sole shareholder, and sole director"
of defendant company); see also Calder v. Jones, 465 U.S. 783, 790 (1984) ("Petitioners are correct
that their contacts with [the forum state] are not to be judged according to their employer's activities
there. On the other hand, their status as employees does not somehow insulate them from
jurisdiction.").

 Because the Rossons attribute tortious conduct to Pessina individually as well as in
his representative capacity, the district court did not err in failing to apply the fiduciary shield
doctrine. Accordingly, we overrule Pessina's final issue.


CONCLUSION

 We overrule all of Pessina's complaints on appeal. We therefore affirm the judgment
of the district court.


 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: November 15, 2001

Publish

1. Pessina presents his argument that the district court erred by failing to apply the fiduciary
shield doctrine in two parts. The first of these is framed as requiring a purely legal determination:
"Did the district court err in holding that the fiduciary shield doctrine does not apply to an individual
whose only acts within Texas, performed solely as a corporate representative, establish personal
jurisdiction over the corporate representative individually?" Because we find no place in the record
in which the district court made such a holding, and because both the district court's letter order and
formal order address the facts of this case specifically, we limit our discussion of the fiduciary shield
doctrine to the facts of this case. See Tex. R. App. P. 38.1(h).