# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-01-00204-CV
===============

**Stefano Pessina, Appellant**

**v.**

**Joe S. Rosson; Elizabeth G. Rosson; Ghent W. Rosson; Todd A. Rosson; and
Trevor J. Rosson, Individually, Appellees**

=============================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GNO-01419, HONORABLE PETER LOWRY, JUDGE PRESIDING
=============================================================

Appellant Stefano Pessina brings this appeal from the district court's denial of his special appearance. Pessina contends the district court erred by (1) denying his special appearance, (2) holding Texas has specific jurisdiction over him, (3) determining that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice, and (4) failing to hold that the fiduciary shield doctrine applied to Pessina's acts.[1] We will affirm the district court's order.

---

[1] Pessina presents his argument that the district court erred by failing to apply the fiduciary shield doctrine in two parts. The first of these is framed as requiring a purely legal determination: "Did the district court err in holding that the fiduciary shield doctrine does not apply to an individual whose only acts within Texas, performed solely as a corporate representative, establish personal jurisdiction over the corporate representative individually?" Because we find no place in the record in which the district court made such a holding, and because both the district court's letter order and formal order address the facts of this case specifically, we limit our discussion of the fiduciary shield doctrine to the facts of this case. *See* Tex. R. App. P. 38.1(h).

## BACKGROUND

Pessina, a resident of Monaco and citizen of Italy, represented Alliance Unichem ("Alliance"), an English corporation, in investment negotiations with Rx.com, an Austin corporation formerly owned and controlled by the Rossons. Pessina traveled to Texas five times within a span of two years to meet with Joe Rosson concerning business dealings between Alliance and Rx.com. Rosson alleges that, as a result of those meetings and certain assurances made by Pessina, Rosson entered into a course of dealings ultimately culminating in Rx.com's insolvency. Alliance assumed ownership of Rx.com as a result of its creditor status with the company. The Rossons initially brought suit against Alliance and other corporate defendants and later amended their pleadings to include Pessina individually. Pessina filed a special appearance, which the district court denied. Pessina now brings this interlocutory appeal.

## DISCUSSION

### *Specific Jurisdiction*

In his first two issues, Pessina argues the district court erred by denying his special appearance and by holding Texas has personal jurisdiction over him. Generally, the standard of review for a district court's denial of a special appearance is a factual sufficiency review. *See, e.g., Minucci v. Sogevalor*, 14 S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *Cadle v. Graubart*, 990 S.W.2d 469, 470 (Tex. App.—Beaumont 1999, no pet.). However, "[w]here . . . the special appearance is based on undisputed or otherwise established facts, an appellate court should conduct a de novo review of the trial court's order." *Brown v. Gen. Brick Sales Co., Inc.*, 39 S.W.3d 291, 294 (Tex. App.—Fort Worth 2001, no pet. h.); *see also Daimler-Benz*

*Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 715 (Tex. App.—Austin 2000, pet. dism'd w.o.j.). In his reply brief and at oral argument, Pessina contends the facts underlying the jurisdictional inquiry are undisputed:

> A concession made by the Rossons' counsel at the hearing below removed the only factual controversy from the personal jurisdiction calculus, leaving for the decision the application of controlling law to the undisputed facts. Specifically, the Rossons' attorney told the district court it did not have to resolve any factual conflict as to whether Mr. Pessina stood to benefit personally from any of the activity that the Rossons claim forms the basis of personal jurisdiction.

To support his argument that there are no disputed facts, Pessina points to the following statement made by the Rossons' attorney during the special appearance hearing:

> I think we're going to have a real argument about the personal gain of Mr. Pessina versus Mr. Rosson, about whether they were trying to make a personal profit separate and apart from the corporation. We're not going to agree on that, but that's irrelevant.

We do not agree with Pessina that this statement by the Rossons' attorney renders this dispute purely legal; a factual dispute still exists as to whether Mr. Pessina acted in a personal or representative capacity during some of his negotiations with Mr. Rosson. Therefore, we will review the district court's denial of his special appearance under a factual sufficiency review. *See Cadle*, 990 S.W.2d at 471.

We note that the Rossons do not have the burden to establish facts to support the exercise of jurisdiction over Pessina; it is Pessina who has the burden of negating all bases of jurisdiction. *See id.* To prevail in a special appearance, a nonresident must negate all bases of

personal jurisdiction. *Id*. at 470. When a trial court overrules a special appearance, the defendant should request findings of fact under Texas Rule of Civil Procedure 296. *Daimler-Benz*, 21 S.W.3d at 715. Because the trial court made no findings in this case, we must imply all facts necessary to support the ruling. *Id*.

A Texas court may exercise jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction comports with due process. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997 & Supp. 2001). The broad language of the long-arm statute permits an expansive reach, limited only by the federal constitutional requirements of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). As a result, we consider only whether it is consistent with federal due process for the Texas courts to assert personal jurisdiction over Pessina. *See Daimler-Benz*, 21 S.W.3d at 714.

The federal due process clause protects a nonresident's liberty interest in not being subject to the jurisdiction of a forum with which that nonresident has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Under the federal due process clause, a state may assert personal jurisdiction over a nonresident defendant only if the defendant has purposefully established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id*. at 476. The touchstone of minimum contacts is whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities in Texas so that it is reasonable for the nonresident defendant to expect the call of a Texas court. *Daimler-Benz*, 21 S.W.3d at 714.

4

The minimum contacts analysis has been refined into two types of jurisdiction—general and specific. *Id.* The parties stipulate that general jurisdiction is not at issue, and that this appeal is limited to whether Texas has specific jurisdiction over Pessina. Specific jurisdiction exists when the cause of action arises out of or relates to the nonresident's contacts with the forum state. *Id.* The defendant's activities must have been purposefully directed toward the forum state. *Id.* Under specific jurisdiction, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id.* (citing *Guardian Royal*, 815 S.W.2d at 228).

In their fourth amended petition, the Rossons allege that Pessina caused and exploited Rx.com's financial crisis and oppressed its shareholders:

44. Pessina encouraged Rx.com to privately place Rx.com equity needed to fund its operations. Pessina further demanded, as a condition to the Security Purchase Agreement for the purchase of the Convertible Note, that Rx.com accelerate its expansion and marketing plans. Pessina explained that he would be able to obtain additional capital for Rx.com before Rx.com spent its present cash in the accelerated development efforts. Based upon Pessina's representations and requests, Rx.com agreed to accelerate the development plans of Rx.com. This accelerated development led directly to the cash crisis at Rx.com which Alliance Pessina [sic] exploited to steal Rx.com's technology and the value of the Plaintiff's stock at Rx.com. The meeting between Plaintiff Rosson and Rx.com was held in the offices of Rx.com in Austin, Texas.

45. Mr. Pessina traveled to Austin in April 2000 to negotiate the term sheet under which Plaintiffs agreed to resign their management positions at Rx.com. Indeed, Mr. Pessina was the individual who insisted that Plaintiffs leave their management positions. This exit became the vehicle which Alliance and Pessina used to oppress the Plaintiffs' interest as shareholders.

These pleadings sufficiently allege that Pessina is subject to specific jurisdiction in Texas. Tex. R. Civ. P. 45(d); Tex. Civ. Prac. & Rem. Code Ann § 17.042(2) (West 1997) ("[A] nonresident does

business in this state if the nonresident commits a tort in whole or in part in this state."). In support of these allegations, the Rossons offered the affidavit of Mr. Rosson, which stated that Pessina acted in his personal capacity by negotiating for a personal interest in a future business venture and offering to invest personal funds to facilitate the Rossons' withdrawal from Rx.com:

8. Moreover, Mr. Pessina did not act merely in his capacity as an officer of Alliance, he acted in his personal capacity as well. In December 1999, Mr. Pessina requested that I agree to restructure the pan-European Joint venture to include a personal interest for Mr. Pessina and for myself. In addition, in April 2000, during the negotiation of the term sheet in Austin, Texas, Mr. Pessina offered to invest his personal funds in another business venture of mine as compensation for the value of my and the other Plaintiffs' Rx.com stock if it would facilitate my and the other Plaintiffs' withdrawal from our management positions at Rx.com.

Based on the Rossons' pleadings and affidavit, there is sufficient evidence to support the conclusion that Pessina is subject to specific jurisdiction in Texas. *See* Tex. R. Civ. P. 120a(3). Accordingly, the district court did not err in denying Pessina's special appearance, and we overrule his first and second issues.

***Traditional Notions of Fair Play and Substantial Justice***

In his third issue, Pessina argues that the trial court erred by determining that the exercise of personal jurisdiction over him comports with traditional notions of fair play and substantial justice. After a court finds the minimum contacts necessary to exercise personal jurisdiction over a nonresident defendant, federal due process requires a determination of whether the exercise of that jurisdiction comports with traditional notions of fair play and substantial justice. *Guardian Royal*, 815 S.W.2d at 228. In deciding this issue, we consider the following factors: (1) the burden on the

defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Daimler-Benz*, 21 S.W.3d at 725. "When the defendant is a resident of another nation, the court must also consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by a state court as well as the federal government's interest in its foreign relations policies." *Id*. at 725-26.

Another court of appeals has observed that "[o]nly in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Minucci*, 14 S.W.3d at 798-99. Accordingly, it is necessary that Pessina "present a compelling case that the presence of some consideration would render the assertion of jurisdiction unreasonable." *Id.* at 798. Pessina emphasizes that he resides in Monaco and is a citizen of Italy, has neither a business office nor residence in Texas, has no registered agent for service in Texas, owns no real estate and pays no taxes in Texas, has never been licensed to do business in Texas, does not maintain any bank accounts in Texas, and does not conduct any business in Texas. The basis of his last claim, of course, is that he has never conducted business in Texas in a *personal* capacity and therefore has not purposefully availed himself of the benefits and protections of the laws of Texas.

Pessina cites two cases holding that, although a nonresident defendant had minimum contacts, the exercise of personal jurisdiction would not comport with notions of fair play and substantial justice. *See Guardian Royal*, 815 S.W.2d at 233; *Minucci*, 14 S.W.3d at 799. *Guardian*

7

*Royal* involved a dispute between two insurers, neither of which was a Texas consumer or insured; accordingly, the court held "Texas' interest in adjudicating the dispute is considerably diminished." *Guardian Royal*, 815 S.W.2d at 233. Similarly, the First Court of Appeals explained why the exercise of personal jurisdiction over Minucci, an Italian citizen, did not comport with notions of fair play and substantial justice:

> Texas has no interest in adjudicating this dispute. The cause of action did not occur in Texas; neither party is a resident of this state; Swiss law governs the dispute, none of the investors were Texas citizens, and the contract was written in Italian. Thus, Texas would not be protecting its citizens from the potential future actions of Minucci.

*Minucci*, 14 S.W.3d at 798.

In the case at bar, however, Texas' interest in adjudicating the dispute is significant: Rx.com is a Texas corporation; the Rossons are residents of Texas; Pessina's alleged tortious acts occurred in Texas; and whether Pessina is liable will be determined according to Texas law. In this case, "the interests of the forum state and the plaintiff will justify the severe burden placed upon the nonresident defendant." *Guardian Royal*, 815 S.W.2d at 232. Furthermore, Pessina does not contend that the procedural and substantive policies of other nations or the federal government's foreign relations policies will be affected by the exercise of personal jurisdiction over him. Therefore, we overrule Pessina's third issue.

### The Fiduciary Shield Doctrine

In his final issue, Pessina argues the district court erred in failing to apply the fiduciary shield doctrine to his acts, rendering him individually amenable to suit in Texas. The fiduciary shield

doctrine is a theory of liability that has been applied in a jurisdictional context. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437-38 (Tex. 1982) (speaking in terms of "alter ego"). The doctrine shields a nonresident defendant from suit in a forum state when his or her only contacts with that state are in a representative capacity. *See Cadle*, 990 S.W.2d at 473. The parties agree that this doctrine has been used to shield a nonresident defendant from suit based on general jurisdiction, but there is some disagreement about whether it applies in a specific jurisdiction context.

The Rossons' pleadings specifically allege that Pessina caused and exploited Rx.com's financial crisis and oppressed its shareholders. In addition, Mr. Rosson's affidavit asserts that Pessina acted in his personal capacity by negotiating for a personal interest in a future business venture and offering to invest personal funds to facilitate the Rossons' withdrawal from Rx.com. This case is therefore distinguishable from two of the main cases Pessina relies upon for the contention that he is protected from personal jurisdiction by the fiduciary shield doctrine. *See Siskind*, 642 S.W.2d at 437-38 (emphasizing that plaintiff's petition did not attribute specific acts of conspiracy or misrepresentations to individual respondents); *Cadle*, 990 S.W.2d at 473 (noting that plaintiff's "allegations and evidence relevant to the tortious conduct are non-specific" and that the only evidence presented by plaintiff in support of his argument that the court should have personal jurisdiction over defendant is that he "was the president, sole shareholder, and sole director" of defendant company); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with [the forum state] are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction.").

9

Because the Rossons attribute tortious conduct to Pessina individually as well as in his representative capacity, the district court did not err in failing to apply the fiduciary shield doctrine. Accordingly, we overrule Pessina's final issue.

## CONCLUSION

We overrule all of Pessina's complaints on appeal. We therefore affirm the judgment of the district court.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: November 15, 2001

Publish