**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00068-CV**
_____

**EX PARTE JOHN FRANKLIN WILLIAMS JR.**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 24-01-00199-CV**

**MEMORANDUM OPINION**

John Franklin Williams Jr. filed a notice of appeal of an order denying an application for a writ of habeas corpus, and in the brief he filed to support his appeal he complains the trial court erred in denying the Application for Writ of Habeas Corpus (the "application"), which he filed with the trial court during January 2024. Williams alleged in his application that he "is civilly committed pursuant to Texas Health & Safety Code Chapter 841." He attached to his application a judgment and an order of civil commitment in Trial Cause Number 14-02-01500-CV. In his habeas corpus application Williams contended the 2015 Amendments to Chapter 841 should not apply to him and he argued the statute is unconstitutional as applied to him. After

1

receiving the notice of appeal and docketing the appeal, the Clerk of the Court questioned this Court's jurisdiction. Williams responded and argued this Court could exercise appellate jurisdiction because the trial court had ruled on the merits of the application. Williams then alternatively asked this Court to consider granting mandamus relief if the Court found it lacked appellate jurisdiction. After considering the record and the parties' briefs, we dismiss the appeal and deny the petition for a writ of mandamus.

For the reasons explained below, we conclude the trial court did not rule on the merits of Williams' application for a writ of habeas corpus. We also conclude the trial court did not abuse its discretion in denying the application and that Williams is not entitled to relief under his alternative argument asking the Court to treat his appeal as a petition for mandamus. We dismiss the appeal and deny the petition for a writ of mandamus.

Background

In his application for a writ of habeas corpus, Williams alleged he is in the custody of Marsha McLane, Executive Director of the Texas Civil Commitment Office (TCCO) and that he is "unlawfully confined and restrained in his liberty at the Texas Civil Commitment Center[.]" Williams stated that he was civilly committed in 2014 in the 435th District Court of Montgomery County, Texas. *See*

2

Tex. Health & Safety Code Ann. § 841.001-.209 (the SVP Act). Williams claimed the 2015 amendments to the SVP Act, which the 84th Legislature passed as Senate Bill Number 746 (S.B. 746), are unconstitutional as applied to him because the enactment language of S.B. 746, subsection 40(a), made the law prospective only and he was civilly committed as a sexually violent predator before June 17, 2015, the effective date of S.B. 746. Williams attached to his application orders, signed on September 1, 2015, amending the order of civil commitment and granting the State's motion to place Williams in the TCCO's Tiered Treatment Program pursuant to the newly enacted section 841.0831 of the Health and Safety Code. Williams alleged his involuntary residence in the Texas Civil Commitment Center is illegal because section 12 of S.B. 746, which deleted "outpatient" from the first and second sentences of section 841.081 of the Health and Safety Code and section 16 of S.B. 746, and which created a tiered treatment program and required incarceration in a "total confinement facility" in newly enacted section 841.0831 of the Health and Safety Code, should not apply to him because he was already subject to civil commitment under the SVP Act on June 17, 2015. Williams asked the trial court to issue the writ of habeas corpus and order McLane to release Williams from confinement in the Texas Civil Commitment Center and "provide him treatment and supervision in a manner other than in confinement." Williams requested a

videoconference hearing in the trial court on his application for a writ of habeas corpus.

In a response opposing Williams' application for a writ of habeas corpus, the State argued that the appellate court had rejected the same arguments in a mandamus petition that Williams filed in 2016, and nothing in the law had changed since that date. The State argued the appellate court had held that the S.B. 746 enactment language that applied to Williams was subsection 40(b), which required the trial court to modify Williams' civil commitment order and place Williams in the tiered treatment program.

In reply to the State's response to his habeas corpus application, Williams argued that although he "referred to" subsection 40(a) in his 2016 mandamus petition, the State and the appellate court focused on subsection 40(b) without analyzing subsection 40(a).

On February 1, 2024, the trial court denied Williams' motion for a hearing after reviewing the request for a hearing, the State's response, and "all other documents related to Williams' application for writ of habeas corpus[]" and finding "there are no controverted, previously unresolved facts material to the legality of Williams' civil commitment." In a separate order, the trial court denied Williams' application for a writ of habeas corpus. In its order, the trial court stated it had reviewed Williams' request for a hearing, the State's response to the request for a

4

hearing, and "all other documents related to Williams' application[,]" it found "there are no controverted, previously unresolved facts material to the legality of Williams' civil commitment[,]" and it found "legal authority overruling Williams' arguments in his application."

On February 5, 2024, Williams filed a motion to strike the State's response to his application for a writ of habeas corpus. Williams claimed the Special Prosecution Unit (SPU) lacked statutory authorization to represent the State in a habeas corpus proceeding, argued that he had inadvertently served the Montgomery County District Attorney, and that on January 31, 2024, he served Respondent McLane by serving the General Counsel of the TCCO by regular mail. Williams submitted a proposed order that is contained in the clerk's record and remains unsigned.

On February 22, 2024, Williams filed a notice of appeal. Upon receiving the clerk's record, the Clerk of the Court of Appeals issued a notice questioning whether the appellate court had jurisdiction to consider the appeal. In response, Williams argued he could appeal the order because the trial court had ruled on the merits of the habeas corpus application. He argued that, although the trial court declined to issue the writ, it had considered the facts argued in the application and considered the arguments raised in Williams' application. Finally, Williams asked that this Court consider his request in the alternative as seeking a writ of mandamus. The Clerk of the Court notified Williams that if he wanted the appellate court to consider

a request for mandamus relief, he would be required to file a mandamus petition at the same time or combine his petition with the Appellant's Brief.

After Williams appealed, Williams filed a motion to strike the brief filed by the SPU on behalf of the State of Texas. He argues the SPU "does not have standing to be a party in this nor to represent a party on this case." He argues the Respondent is Marsha McLane in her capacity as Director of the TCCO, and the SPU should not have the right to file a brief.

Special Prosecution Unit

Williams' objection to the SPU's appearance in the trial court and in the appellate court lacks merit because Williams ignores the fact that the SPU represents the State of Texas. In his application for a writ of habeas corpus, as the person held in custody Williams is the Applicant, as the person holding Williams in custody McLane is the Respondent, and as the party whose petition for civil commitment resulted in the trial court's judgment and order of civil commitment the State of Texas is the Real Party in Interest.

The source of Williams' current "confinement" is the 2014 Final Judgment and Order of Commitment. That order required Williams to reside in supervised housing at a Texas residential facility under contract with TCCO's predecessor agency, or at another location or facility approved by that agency. *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 1201, § 8, 2011 Tex. Sess. Law Serv. 3197, 3200-01

6

(amended 2015, 2017). The SPU provides legal assistance in civil commitment cases filed under the SVP Act. *See* Tex. Health & Safety Code Ann. § 841.042 ("On request of the attorney representing the state, the special prosecution unit shall provide legal, financial, and technical assistance to the attorney for a proceeding conducted under this chapter."). An application for a writ of habeas corpus is a procedural vehicle for challenging the legality of a person's confinement. *See generally* Tex. Const. Art. I, § 12 ("The writ of Habeas Corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual."). In Williams' case, the confinement he alleges is illegal is based on the 2014 order of civil commitment, as modified through later proceedings, including the 2015 Amended Order of Civil Commitment that ordered TCCO to provide Williams with sex offender treatment and required that Williams reside where instructed by TCCO.

In his application for a writ of habeas corpus, Williams acknowledged he is subject to the order of civil commitment. When a person subject to an order of civil commitment under the SVP Act challenges an alleged confinement imposed by virtue of that civil commitment, the SPU is authorized to represent the State in the courts where the order's validity is challenged.

Appeal

Next, we consider whether we may review the trial court's order as an exercise of our appellate jurisdiction. *See* Tex. Gov't Code Ann. § 22.220(a); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (allowing an appeal from a final judgment of the district court). In his response to the Clerk's notice regarding jurisdiction, Williams argues the order signed by the trial court in his case is similar to the order signed by the trial court in *Ex parte Rubio*, in which we held the trial court ruled on the merits of the SVP's application seeking habeas relief. *See* No. 09-22-00219-CV, 2023 WL 4781646, at *2 (Tex. App.—Beaumont July 27, 2023, mand. denied, habeas corpus denied) (mem. op.). In *Ex parte Rubio*, Rubio (also an SVP) filed an Application for Writ of Habeas Corpus wherein he alleged 23 grounds in his application making both legal and factual complaints against his continued confinement. However, Rubio did not support his application for habeas relief with a supporting affidavit or with documents to support his application for habeas corpus relief. When the State answered Rubio's application, it supported its answer with this Court's 2013 memorandum opinion dismissing Rubio's appeal from the civil commitment order, our mandate, the denial of Rubio's petition for review by the Supreme Court of Texas, and this Court's 2017 memorandum opinion denying Rubio's petition seeking a writ of mandamus to compel the trial court to rule on his motion seeking to declare the judgment committing him as a sexually violent

predator void because he claimed that one of his prior convictions arose from a no contest plea. The SPU argued the grounds raised by Rubio were not cognizable in a habeas proceeding. The trial court in *Ex parte Rubio* entered an Order denying the application and, in the order, stated that the application "should be on all grounds Denied." On appeal to this Court and, after examining the record as a whole, we concluded that we had appellate jurisdiction because the trial court in denying Rubio's application had made a "merits ruling."

Here, unlike the application filed by Rubio, Williams's application for a writ of habeas corpus makes a legal argument about why he contends the 2015 Amendments and the Tiered Treatment Program do not apply to him. Williams does not controvert any of the historical facts. In the trial court's Order denying Williams' application, the trial court states there is "legal authority overruling Williams's arguments in his application. Therefore, Williams' Application for Writ of Habeas Corpus is also DENIED." There are additional recitals along with the nature of the application filed by Williams to distinguish this case from *Rubio*.

"[A]n appellate court has no jurisdiction to hear the appeal when the trial court did not deny the application for writ of habeas corpus on its merits." *Ex parte Miller*, No. 09-08-00194-CV, 2008 WL 5780816, at *1 (Tex. App.—Beaumont Apr. 2, 2009, no pet.) (mem. op.). After reviewing the record as a whole in this case, we conclude the order denying Williams' application for a writ of habeas corpus was

9

not appealable as a final judgment and that the trial court determined the application lacked merit from the face of Williams' application.

Mandamus

An appellant may invoke the court's mandamus jurisdiction by requesting that we consider the appeal brief as a mandamus petition in the event the appellate court determines it lacks appellate jurisdiction over the case. *See In re Commitment of Renshaw*, 672 S.W.3d 426, 427-28 (Tex. 2023) (orig. proceeding); *CMH Homes v. Perez*, 340 S.W.3d 444, 452 (Tex. 2011). Williams requested that the Court treat his appellate brief as a request for mandamus relief.

We may issue a writ of mandamus to remedy a clear abuse of discretion by the trial court when the relator lacks an adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (internal quotations omitted). A trial court also abuses its discretion if it fails to correctly analyze or apply the law, because "'[a] trial court has no "discretion" in determining what the law is or [in] applying the law to the facts[.]'" *See Prudential*, 148 S.W.3d at 135 (quoting *Walker*, 827 S.W.2d at 840).

10

Statutory construction is a question of law we review de novo. *In re D.S.*, 602 S.W.3d 504, 514 (Tex. 2020). "Our primary objective in construing statutes is to give effect to the Legislature's intent." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id*. "If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the statute." *In re D.T.*, 625 S.W.3d 62, 71 (Tex. 2021). We presume that each word contained in a statute has a purpose and that words not included were omitted purposefully. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017).

When the trial court signed the order committing Williams as a sexually violent predator in 2014, section 841.082 of the Health and Safety Code allowed the committing court to sign an order "requiring the person to reside in a Texas residential facility under contract with the office or at another location or facility approved by the office;" and "requiring the person's participation in and compliance with a specific course of treatment provided by the office and compliance with all written requirements imposed by the case manager or otherwise by the office;" in addition to "any other requirements determined necessary by the judge." *See* 2011 Tex. Sess. Law. Serv. at 3200. And, this Court has previously rejected challenges,

by Williams and others, to the committing court's order modifying the order of civil commitment to order a person who had been civilly committed before 2015 to be placed into the tiered treatment program that the Legislature mandated in 2015. *See In re Wilson*, No. 09-16-00243-CV, 2016 WL 5225422, at \*\*3-4 (Tex. App.—Beaumont Sept. 22, 2016, orig. proceeding) (mem. op.); *In re Martinez*, No. 09-16-00263-CV, 2016 WL 4698645, at \*1 (Tex. App.—Beaumont Sept. 8, 2016, orig. proceeding) (mem. op.); *In re Williams*, No. 09-16-00087-CV, 2016 WL 4249175, at \*1 (Tex. App.—Beaumont Aug. 11, 2016, orig. proceeding) (mem. op.). The relator in *Wilson* also argued that his amended commitment order unlawfully interfered with his rights under the original commitment order to receive outpatient treatment. *See* 2016 WL 5225422, at \*3. This Court rejected that argument, finding that the trial court had the authority to modify its prior orders and the relator "had no vested rights under the trial court's previous orders." *Id*. at \*4. We explained that the judgment allowed the agency in charge of the relator's treatment to decide both where he would be required to live and to supervise the program of sex offender treatment that the commitment order required that he receive. *Id*. "[B]y amending the commitment order so that the amended order complied with the changes the Legislature made to the SVP statute in 2015, the trial court did not violate [the relator's] constitutional rights." *Id*. at 3; *see also In re Commitment of May*, 500

12

S.W.3d 515, 524-26 (Tex. App.—Beaumont 2016, pet. denied); *In re Commitment of Cortez*, 405 S.W.3d 919, 935-36 (Tex. App.—Beaumont 2013, no pet.)

Williams attempts to distinguish our 2016 opinion denying mandamus relief because he is presenting a different argument, that S.B. 746 is prospectively applied rather than that S.B. 746 is unconstitutionally retroactive. Williams presents an inaccurate description of his argument in his 2016 mandamus petition. We described his argument, as follows:

> Williams argues that the trial court abused its discretion by ordering him into the tiered treatment program because section 40(a) of the amending legislation, S.B. 746, provides that the 2015 amendments to Chapter 841 of the Texas Health and Safety Code apply only to a civil commitment proceeding that is initiated on or after June 17, 2015.

*In re Williams*, 2016 WL 4249175, *1. We rejected Williams' argument, holding instead that because sex offender treatment is a civil commitment requirement imposed by section 841.082 of the Health and Safety Code, "Section 40(b) of S.B. 746 required the trial court to modify the sex offender treatment requirement imposed by section 841.082 to a tiered treatment program after notice to the committed person and a hearing." *Id.*

Williams concedes "the committing court has always had the authority to modify the § 841.082 terms of commitment after notice and a hearing, both prior to and after the amendments[]" which includes "requiring the person to reside where instructed" and "requiring the person's participation in and compliance with the sex

13

offender treatment program[.]" Even though the trial court already had the power to modify Williams' court-ordered sex offender treatment, Williams argues the 2015 amendment to the SVP Act "does not authorize placing Williams, or anyone else into the tiered program, requiring total confinement." Williams argues he is entitled to "treatment and supervision in a manner other than in confinement." We disagree.

Subsection 40(b) of S.B. 746 states:

> If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section.

Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Sess. Law Serv. 2701, 2711. Williams argues this paragraph applies only to section 13 of S.B. 746, which amended section 841.082 of the Health and Safety Code. *See id.* 2015 Tex. Sess. Law Serv. at 2704-05. Williams argues the changes S.B. 746 made to other sections within Chapter 841 of the Health and Safety Code, including the tiered treatment program requirements found in newly added section 841.0831, are prospective only and cannot be applied to him due to the operation of subsection 40(a) of S.B. 746, which provides:

> SECTION 40. (a) Except as provided by Subsection (a-1) of this section, the changes in law made by this Act to Chapter 841, Health and Safety Code, apply to a civil commitment proceeding under that chapter

14

that is initiated on or after the effective date of this Act, regardless of when the applicable petition for civil commitment was filed.

*Id*. 2015 Tex. Sess. Law Serv. at 2711.[1]

Williams argues section 41 of S.B. 746 applies only to the 2015 amendment to section 841.085 of the Health and Safety Code, subsection 40(b) applies only to the 2015 amendment to section 841.082 of the Health and Safety Code, and subsection 40(a) applies to all remaining sections of the SVP Act that the legislature amended in S.B. 746. Williams misinterprets subsection 40(a), he reads it in isolation, without considering the purpose of S.B. 746, and he ignores the plain language of what section 40 actually says. For example, in sections 1, 3, and 35-38 of S.B. 746, the legislature replaced the Office of Violent Sex Offender Management with the TCCO. *See* 2015 Tex. Sess. Law Serv. at 2701 (amending Health & Safety Code Ann. §§ 841.002(4); 841.007), 2711 (amending Tex. Gov't Code Ann. § 420A.001-.004). Under Williams' misguided arguments, the statutes creating the

---

[1] Subsection (a-1), which provides an exception to Section 40(a), states:

(a-1) The jurisdiction of a district court, the representation of the state by the civil division of the special prosecution unit, and the representation of a respondent by the Office of State Counsel for Offenders or other court-appointed counsel in any civil commitment trial, any review of a petition for release, or any biennial review under Chapter 841, Health and Safety Code, that is pending on the effective date of this Act remain unaffected by this Act until the conclusion of that proceeding.

TCCO and giving it the responsibility for administering the state's civil sex offender treatment program would not apply to anyone who was civilly committed before June 17, 2015. That would be expressly contrary to the statute.

Subsection 40(b) expressly requires the court with jurisdiction over a committed person, after notice and a hearing, to modify any civil commitment requirement imposed under Health and Safety Code Chapter 841 to conform with the changes that S.B. 746 made to any of the civil commitment requirements listed in Health and Safety Code section 841.082. *Id*. at 2711. The civil commitment requirements of section 841.082 include requiring the person to reside where instructed by the TCCO, requiring the person's participation in and compliance with the sex offender treatment program provided by TCCO, and requiring the person to submit to the supervision. *See* Tex. Health & Safety Code Ann. § 841.082. Williams' argument is contrary to our prior precedent, as well as contrary to the express language in the statute.

For all the reasons outlined above, we conclude the 2015 amendments to the SVP Act, including the tiered treatment program, apply to Williams as a matter of law and are not unconstitutional as applied to Williams. We deny Williams' request for mandamus relief.

16

Conclusion

In conclusion, when the trial court denied Williams' request and application for a hearing, the trial court did not rule on the merits of Williams' application seeking a writ of habeas corpus. Accordingly, we lack appellate jurisdiction over Williams' attempted appeal of the trial court's order denying Williams' application and his appeal is dismissed. That said, after considering Williams' brief as a petition for a writ of mandamus, we further conclude that the trial court acted within its discretion and that Williams is not entitled to mandamus relief because we conclude that the 2015 amendments to the SVP Act, including the tiered treatment program, apply to Williams as a matter of law. We deny the petition for a writ of mandamus. *See* Tex. R. App. P. 43.2(f), 52.8(a).

APPEAL DISMISSED; PETITION DENIED.

PER CURIAM

Submitted on May 21, 2024
Opinion Delivered June 27, 2024

Before Golemon, C.J., Horton and Wright, JJ.

17